UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DUANE HENRY | CIVIL ACTION |
| VERSUS | NO. 15-5011 |
| N. BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY | SECTION "S"(4) |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.   Factual Background**

The petitioner, Duane Henry ("Henry"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On August 26, 1993, Henry and a co-defendant, Joshua Williams, were indicted by an Orleans Parish Grand Jury for the first degree murder of Todd Perry.[3] Henry entered a plea of not guilty to the charge on October 25, 1993.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 2 of 8, Indictment, 8/26/93.

[4] St. Rec. Vol. 2 of 8, Minute Entry, 10/25/93.

The record reflects that, on June 27, 1993, Romesee Washington asked her boyfriend, Todd Perry, to go to the store.[5] Washington fell asleep and woke around midnight to find that Perry had not returned. Washington called Perry's beeper. Perry soon returned the call to say he had to go to a different store and stopped at a Rally's. Shortly after that, Perry returned home followed by two young men carrying guns with infrared lasers.

When the three men entered, no one said anything. The shorter man, later identified as Henry, took Perry upstairs and the taller man, later identified as Williams, tied Washington up with duct tape.[6] Perry and Henry returned a few minutes later, and Perry stated "that's $8,000.00, that's everything." Henry and Williams also took Washington's Rottweiler puppy in a luggage bag and left with Perry, threatening to kill Perry if Washington moved.

After they left, Washington kicked the walls and screamed to get her neighbor's attention to no avail. A few minutes later, she heard a car drive up, and Williams entered the house. He retrieved a knife from the kitchen, cut the tape around Washington's ankles, and led her outside to the front passenger seat of Perry's car. Henry was in the driver's seat, and Williams sat behind her with a gun pointed at her. After driving for about ten minutes, the men ordered her to get out of the car and onto her knees. Before she could get to her knees, Williams began shooting at her. He did not heed her pleas to stop, so she pretended to be dead. He then walked up to her and shot her one last time at close range.

---

[5]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. St. Rec. Vol. 1 of 8, 4th Cir. Opinion, 96-KA-0131, pp. 2-4, 9/17/97; *see also*, *State v. Williams*, 701 So.2d 270 (La. App. 4th Cir. 1997) (Table).

[6]St. Rec. Vol. 1 of 8, Motion Hearing Transcript, p. 4, 11/12/93.

When the men drove off, Washington screamed for help. The police were called with complaints of gunshots and screams, and they found Washington under hedges in the 9400 block of Colapissa Street. She was still tied with duct tape and had been shot several times. She was taken to Charity Hospital for treatment. The police found seventeen spent .9mm casings in close proximity at the scene.

Around that same time, other officers were dispatched to the scene of a shooting at Miro and Erato Streets. The officers found Perry, who was tied with duct tape and had bullet wounds to the neck and head. Due to the extent of his injuries, he was not resuscitated and died at the scene. The police recovered four .9mm casings at the scene.

The police later recovered an unrelated gun, a box with white powder residue, and other drug paraphernalia from Washington and Perry's apartment. Ballistics test also established that the same weapon fired the casings found at both scenes. Aided by Washington's photographic identifications, the police were able to locate and arrest Henry, who was in the hospital being treated for burns after torching Perry's car. His family returned the puppy to police.

Following two mistrials,[7] Henry and Williams were jointly tried before a jury on September 19 through 22, 1994, and were found guilty of the responsive verdict of second degree murder.[8] The Trial Court sentenced both Henry and Williams on September 30, 1994, to serve life in prison

---

[7]St. Rec. Vol. 2 of 8, Trial Minutes, 3/7/94; Trial Minutes, 3/8/94; Trial Minutes, 3/9/94; Trial Minutes, 6/6/94; Trial Minutes, 6/7/94.

[8]St. Rec. Vol. 2 of 8, Trial Minutes, 9/19/94; Trial Minutes, 9/20/94; Trial Minutes, 9/21/94; Trial Minutes, 9/22/94; Trial Transcript (continued), 9/19-20/94; Jury Verdict (Henry), 9/22/94; Jury Verdict (Williams), 9/22/94; St. Rec. Vol. 1 of 8, Trial Transcript, 9/19-20/94; St. Rec. Vol. 3 of 8, Voir Dire and Closing Transcript, 9/19-21/94.

without benefit of parole, probation, or suspension of sentence.[9] At the time of the offense, Henry was sixteen years old.[10] His conviction and sentence were affirmed on direct appeal by the Louisiana Fourth Circuit on September 17, 1997.[11] Henry did not seek review of that ruling.

After unsuccessful attempts at post-conviction relief unrelated to the claims asserted in this petition,[12] on or about October 24, 2012, Henry filed a motion to correct his sentence based on the United States Supreme Court's opinion in *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012), which held that a life sentence imposed upon a juvenile without benefit of parole was unconstitutional.[13] After enrollment of counsel and additional briefing, the Trial Court granted Henry's motion at a hearing held on March 8, 2013 after finding that *Miller* should be retroactively applied to Henry's case.[14]

On April 11, 2013, the Louisiana Fourth Circuit denied the State's writ application seeking to overturn the Trial Court's order resentencing Henry under *Miller*.[15] However, on June 20, 2014,

---

[9]St. Rec. Vol. 2 of 8, Sentencing Minutes, 9/30/94.

[10]St. Rec. Vol. 5 of 8, Trial Court Judgment, 2/4/14.

[11]St. Rec. Vol. 1 of 8, 4th Cir. Opinion, 96-KA-0131, 9/17/97; *State v. Williams*, 701 So.2d at 270.

[12]*State ex rel. Henry v. State*, 64 So.3d 214 (La. 2011); *State ex rel. Henry v. State*, 801 So.2d 367 (La. 2001); St. Rec. Vol. 4 of 8, 4th Cir. Order, 2010-K-0639, 5/19/10; 4th Cir. Writ Application, 2010-K-0639, 4/30/10; Trial Court Ruling, 3/11/10; Application for Post-Conviction Relief, 7/17/09; St. Rec. Vol. 6 of 8, La. S. Ct. Order, 2010-KH-1462, 6/24/11; La. S. Ct. Writ Application, 10-KH-1462, 6/23/10 (dated 6/11/10); La. S. Ct. Order, 2001-KH-0713, 11/9/01; La. S. Ct. Writ Application, 01-KH-0713, 3/19/01; 4th Cir. Order, 2000-K-2442, 1/12/01; 4th Cir. Writ Application, 2000-K-2442, undated; Application for Post-Conviction Relief, filed on unspecified date in 2000; Trial Court Order, 9/20/00.

[13]St. Rec. Vol. 5 of 8, Motion to Correct Illegal Sentence, 10/24/12.

[14]St. Rec. Vol. 5 of 8, Minute Entry, 3/8/13; Hearing Transcript, 3/8/13; Supplemental Memorandum, 10/24/12; State's Opposition, 2/18/13; Reply Brief, 2/28/13; Reply to State's Motion to Quash, 3/3/13; State's Opposition Memorandum, 3/8/13.

[15]St. Rec. Vol. 5 of 8, 4th Cir. Order, 2013-K-0448, 4/11/13; 4th Cir. Writ Application, 2013-K-0448, 4/8/13.

the Louisiana Supreme Court reversed the Trial Court finding that *Miller* was not retroactively applicable to Henry whose conviction was final before the *Miller* opinion was issued.[16] Upon return of the case on remand, the Trial Court denied Henry's motion on February 4, 2014.[17]

Henry sought review of that order in the Louisiana Fourth Circuit asserting four grounds for relief:[18] (1) The Trial Court erred in denying the motion to correct his illegal sentence because *Miller* is retroactively applicable; (2) Due Process prohibited the Trial Court from sentencing Henry to a sentence that was not proscribed by legislative authority at the time of the original sentencing; (3) Principles of ex post facto protections prohibited the Trial Court from sentencing Henry except under laws in place at the time; and (4) the separation of power doctrine prohibited the Trial Court from sentencing Henry under laws not in place at the time.

On April 25, 2014, Louisiana Fourth Circuit denied the writ application based on the holding in *State v. Tate*, 130 So.2d 829 (La. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 2663 (2014), in which the Louisiana Supreme Court determined that *Miller* did not retroactively apply on collateral review.[19] The Louisiana Supreme Court also denied Henry's related writ application on March 6, 2015, finding that *Miller* was not retroactively applicable to Henry, citing *State v. Tate*.[20]

---

[16]*State v. Williams*, 142 So.3d 9 (La. 2014); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2013-KK-0820, 6/20/14; La. S. Ct. Writ Application, 13-KK-820, 4/15/13.

[17]St. Rec. Vol. 5 of 8, Trial Court Judgment, 2/4/14.

[18]St. Rec. Vol. 5 of 8, 4th Cir. Writ Application, 2014-K-0369, 4/15/14 (dated March 20, 2014).

[19]St. Rec. Vol. 5 of 8, 4th Cir. Order, 2014-K-0369, 4/25/14.

[20]*State ex rel. Henry v. State*, 161 So.3d 9, (La. 2015); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KH-1118, 3/6/15; La. S. Ct. Writ Application, 14-KH-1118, 5/30/14 (dated 5/21/14).

By May of 2016, Henry was summoned before the state trial court for consideration of the need to correct his sentence, i.e. resentencing under *Miller*, to no avail.[21] According to the minimal 2016 records provided to the Court, the state trial court has postponed ruling on the validity of Henry's current sentence and the resentencing issue several times, with an indefinite continuance having been granted on October 12, 2016.[22]

## II.    Federal Habeas Petition

On October 6, 2015, the clerk of this Court filed Henry's petition for federal habeas corpus relief in which he asserts the sole issue of whether the life sentence without benefit of parole which was imposed upon him for a crime committed while he was a juvenile is unconstitutional under the Supreme Court's holding in *Miller*.[23]

The State initially filed a response suggesting that Henry had not exhausted available state remedies following the clarification in *Montgomery v. Louisiana*, __ U.S. __, 135 S. Ct. 1546 (2015), that *Miller* is retroactively applicable. Specifically, the State urges that the petition should be dismissed without prejudice to allow the state courts the opportunity to comply with *Miller* without federal intervention.[24]

In his response to the State's opposition, Henry argues that the State's exhaustion defense was meritless in light of his presentation of the issue of retroactive application of *Miller* to the state

---

[21]Rec. Doc. Nos. 19, 20, 21; *see also*, Rec. Doc. No. 23, Docket Master (obtained by the Court).

[22]Rec. Doc. No. 23, Docket Master, 10/12/16 Entry.

[23]Rec. Doc. No. 1.

[24]Rec. Doc. No. 17.  The Court also denied the State's inappropriately filed ex parte Motion to Dismiss.  Rec. Doc. Nos. 13, 14.

6

courts before filing his federal petition.[25]  For the first time before this Court, Henry also argued that any effort to resentence him under Louisiana's post-*Miller* sentencing scheme would violate due process, the fair notice requirement, and ex post facto prohibitions, since no other legislatively mandated sentence existed at the time of his offense.  He therefore requests that this Court order the State to resentence him to the next most severe sentence fixed by the legislature at the time of the offense pursuant to the *Miller* mandate.

Both the State and Henry have continued to file notices attempting to keep the court abreast of certain happenings in the state trial court's resentencing proceedings, all of which clearly reflect that the proceedings have been unnecessarily delayed, and Henry has not been resentenced, based on the suggestion that this federal petition should be resolved before the state trial court complies with the clear mandates set forth in *Miller* and *Montgomery*.[26]

### III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on October 6, 2015.[28]  The threshold questions on habeas review under the amended

---

[25]Rec. Doc. No. 18.

[26]Rec. Doc. Nos. 19, 20, 21, 22.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit recognizes that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court docketed Henry's federal habeas petition on October 6, 2015, when it was electronically received, and the case was later opened on April 29, 2016, when the filing fee was paid.  According to the official stamp of the prison, Henry delivered his pleadings to

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Henry's federal petition was timely filed and has not argued procedural default. In addition, the State concedes that Henry exhausted state court review of the issue whether *Miller* was retroactively applicable. The State asserts, however, that Henry has not provided the state courts with the first opportunity to comply with or review his claims in light of the *Montgomery* holding that *Miller* is retroactively applicable, citing *Gomez v. Dretke*, 422 F.3d 246, 266 (5th Cir. 2005) and *Harrington v. Richter*, 562 U.S. 86 (2011). For the following reasons, relief should be granted to Henry under *Miller* and *Montgomery*.

## IV.    Exhaustion Doctrine and Comity in Granting Relief

The State asserts that comity would require this Court to allow the state courts the opportunity to comply with *Miller* free from federal intervention. In doing so, the State contends that Henry should be required to return to the state courts with his claims, request for resentencing, and complete exhaustion of any available remedies to assure a resentencing under *Miller*.

The Court notes that the State's arguments are counterintuitive to the state trial court's reliance on the pendency of this federal petition as a basis to indefinitely postpone Henry's

---

prison officials on October 6, 2015, for electronic mailing to this Court, which was done that same day. Rec. Doc. No. 1, p. 1. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

resentencing under *Miller*.[29]  The state court's reasoning is more of an invitation for federal intervention than a cry for comity.

Nevertheless, in this case, the record reflects that Henry completed exhaustion of the sole issue before this Court, the retroactive application of *Miller*, and in light of the *Montgomery* mandate, there is nothing left to be exhausted.  As for the issue of comity, the deference owed if any enters into the fashioning of the relief to be granted, not in avoiding the granting of the relief to which Henry is entitled.  For the reasons that follow, the Court finds that Henry has exhausted state court review and is entitled to federal habeas relief.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 491-93 (1973); *Nobles*, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Id*. (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added).  It is not enough for a petitioner to assert the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court

---

[29]Rec. Doc. No. 20.

if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S.167, 178-79 (2001). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* (citing *Nobles*, 127 F.3d at 420).

Assertion of an exhaustion defense pursuant to the doctrine discussed in *Gomez* and other cases cited by the State has been rejected by this court in similar *Miller* cases after the *Montgomery* opinion. *See Williams v. Cain*, No. 15-404, 2016 WL 3877973, at *4 (E.D. La. Jul. 18, 2016) (finding *Gomez* distinguishable because the petitioner there requested a stay of his federal proceeding to allow for exhaustion and Williams had already exhausted); *Gillam v. Cain*, No. 14-2129, 2016 WL 3060254, at *4 (E.D. La. May 31, 2016) (same). In those cases, the petitioners were found to have completed exhaustion of the *Miller* issue through the state courts before their federal petition was filed and before *Montgomery*. Recognizing the absolute entitlement to relief available under *Miller*, this court in *Williams* and *Gillam* rejected the State's exhaustion defense because the state courts already had the first full opportunity to provide relief under *Miller*. *Williams*, 2016 WL 3877973, at *5 ("The Court further finds that equity and judicial economy support granting the petition. Requiring Petitioner to return to state court to reassert the same

arguments he previously made would create an unnecessary procedural obstacle."); *Gillam*, 2016 WL 3060354, at *6 (same).

The record is clear that Henry exhausted review of the *Miller* issue through each level of the state courts before filing his federal petition. The procedural history of this case demonstrates that the state courts have had more than ample opportunity to address the retroactive application of *Miller* to Henry, including the reversal of the resentencing granted to him in 2013 and the complete review through the Louisiana Supreme Court after the denial of his motion to correct on remand to the state trial court in 2014.

Henry undoubtedly is entitled under *Miller* and *Montgomery* to relief from his life sentence without benefit of parole imposed upon him for a crime committed while he was a juvenile. The State in fact concedes this, although it challenges the scope of the new sentence to be imposed under *Miller*. The state trial court (under a prior presiding judge) recognized in 2013 that Henry was entitled to resentencing under *Miller*. It took almost three years for the propriety of that initial ruling ultimately to be vindicated by the United States Supreme Court in *Montgomery* on January 25, 2016. Nevertheless, Henry remains in jail under an unconstitutional sentence, because the state trial court has repeatedly declined to vacate the sentence or act earnestly pursuant to *Miller* in spite of the history of the case.

Since the issuance of *Montgomery*, the state trial court has done little if nothing to move Henry any closer to a constitutionally valid sentence, at least in part under the contrived notion that this federal court first must rule. There is nothing this Court can decide that has not already been mandated by the United States Supreme Court in *Miller* and *Montgomery*. Henry was sixteen years old at the time he committed the second degree murder for which he was sentenced to life in

11

prison without benefit of parole, probation or suspension of sentence. Pursuant to *Miller* and *Montgomery*, Henry's life sentence without benefit of parole is unconstitutional, and he is entitled to resentencing and federal habeas corpus relief.

This federal district court has broad discretion to determine the relief that will promote and foster comity between the state and federal courts. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (Section 2243 vests the district courts with "broad discretion in conditioning a judgment granting habeas relief.") The federal courts, however, are limited to the conditional use of the writ of habeas corpus to require the state courts to meet constitutional standards before mandating release. *Smith v. Lucas*, 9 F.3d 359, 366-67 (5th Cir. 1993). The conditional grant of the writ enhances the "AEDPA's goal of promoting comity, finality and federalism by giving state courts the first opportunity to review [the] claim and to correct any constitutional violation in the first instance," *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)).

In this case, the State should be allowed "an opportunity to correct the constitutional violation found by the [federal] court" in its own courts. *See Hilton*, 481 U.S. at 775. The Supreme Court itself made clear that the states have options in correcting *Miller* violations, including the offer of parole eligibility rather than resentencing. *Montgomery*, 136 S. Ct. at 736. To the extent Henry asks this Court to direct or fashion the sentence to be imposed, that is not a remedy available under *Miller*.

For the foregoing reasons, the Court finds that Henry's current life sentence without benefit of parole is unconstitutional under *Miller* and that the state courts, in the first instance, should determine the appropriate sentence or remedy to correct that violation in compliance with *Miller*.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Henry's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **GRANTED**, his sentence to life in prison without benefit of parole be **VACATED**, and the Orleans Parish Criminal District Court be **ORDERED** to, within ninety (90) days of issuance of the district court's order, either resentence Henry, otherwise bring his sentence into conformity with *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012), or release Henry from confinement.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[30]

New Orleans, Louisiana, this 28th day of October, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[30]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.